This appeal is taken by defendant-appellant Ronald W. Kent from the judgment entered by the Court of Common Pleas of Crawford County convicting him of involuntary manslaughter.
On August 20, 1998 three month old Kassie M. Kent stopped breathing and was rushed to the Bucyrus Community Hospital. Upon arrival, the emergency room physician, Doctor Schoettmer, intubated the child and took x-rays revealing that Kassie had been struck on the right side of her head, resulting in massive head trauma. However, the Bucyrus Community Hospital did not have the specialized equipment necessary to care for Kassie and she was immediately life flighted to Children's Hospital in Columbus, Ohio. As would be confirmed by examination at Children's Hospital, Kassie had virtually every rib in her three-month old body fractured along with a broken tibia and a fractured skull. On August 20, 1998 at 8:00 p.m. after a negative-flow blood test was performed confirming absence of all brain activity Kassie Kent was pronounced dead.
In December 1998, Ronald Kent, Kassie's father, and April Greene, Kassie's mother were jointly indicted by the Crawford County Grand Jury for one count of Involuntary Manslaughter based on commission of an underlying felony, Child Endangerment, that resulted in the death of Kassie Kent. Kent filed a motion for separate trials and it was granted. However, Kent later made an oral motion that there be a joint trial with his co-defendant. The Court granted this motion.
The joint trial of Kent and Greene commenced on June 23, 1999. At the end of the State's case, the Court granted April Greene's Criminal Rule 29 motion for acquittal and denied Kent's motion. Upon Greene's acquittal the Court allowed the State to reopen its case so that Greene could testify as a witness for the State. After hearing all the evidence, the jury found Kent guilty of involuntary manslaughter and he was sentenced to 10 years in prison. On appeal from that conviction Kent makes the following assignments of error:
 1. Defendant received ineffective assistance of counsel, due to counsel's failure to limit prejudicial "other acts" evidence and impermissible hearsay, and due to other acts and omissions of counsel; or in the alternative, that it was plain error for the court to admit "other acts" and hearsay evidence.
 2. Appellant's conviction was contrary to the weight and sufficiency of the evidence presented, and therefore, the trial court abused its discretion and erred as a matter of law in denying appellant's Rule 29 motion for judgment of acquittal.
Kent's initial claim is that the actions of his counsel were ineffective and resulted in prejudice. There is a two-prong test for determining the effectiveness of assistance of counsel. First, the attorney's performance must be deficient, falling below the objective standard of reasonable presentation. Second, there must be a reasonable probability that, but for counsel's errors, the result of the case would have been different. See State v.Bradley (1989), 42 Ohio St.3d 136, 142; Strickland v. Washington
(1984), 466 U.S. 668, 687. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Id. at 142. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.Id. at 142. This standard of prejudice, which is far more solicitous of the defendant's rights than the plain error standard, guides our review of the proceedings below.
Kent proposes five ways in which his counsel's performance was deficient at trial. Initially, he claims that his counsel erred by failing to object to the admission or otherwise limit `other acts' evidence. Specifically, Kent claims that the following list of evidence admitted at trial should have been excluded or at least objected to and the failure of Kent's attorney to do so resulted in prejudice:
 1. The Lake Erie "drinking spree" which both Estes and Green testified to, either on the State's direct or on cross-examination by Greene's counsel.
 2. References to Kent and Kafer being "drinking buddies".
 3. Testimony of Bigelow regarding Kent's failure to report income to HUD, on cross examination by Greene's counsel.
 4. Testimony of Greene regarding Kent's prior violence toward her.
 5. Testimony of Kafer regarding his role in paying appellant "under the table" to hide a paper trail of an employment relationship.
 6. Testimony of State's witness Susan Laird, whose direct testimony was for the sole purpose of corroborating Greene's testimony regarding Kent's prior violent conduct.
 7. Testimony of Greene, on direct exam, regarding Kent's alleged denial during her pregnancy that the baby was his, and that the father was a "nigger".
 8. Testimony of Greene regarding Kent's minimal contribution to household expenses.
Character evidence such as that outlined above is generally inadmissible to prove that the defendant acted in conformity therewith. Evid.R. 404(A). However, the decision of the attorney to object to such an admission is discretionary. The motive behind an attorney's decision to object or failure to do so is hidden from our review. Despite the fact that the above testimony appears to be inadmissible character evidence, this court cannot say that the failure of Kent's attorney to object to its admission in any way prejudiced Kent because none of statements outlined above have a tendency to disprove Kent's theory of the case, that someone else inflicted the fatal blow upon Kassie Kent or rather that the fatal blow was not inflicted during the time Kent had custody of Kassie. As a result, we conclude that Kent's failure to object or otherwise limit this evidence resulted in no prejudice to Kent that would have resulted in acquittal.
Kent, however, argues further that, should this court be unable to find ineffective assistance of counsel, it should, in the alternative, find error in the admission of evidence under the "plain error" standard. Since our review of ineffective assistance of counsel is more solicitous to criminal defendants than that of the plain error review of evidence this court cannot say there has been plain error when, in fact it has found no ineffective assistance of counsel.
Kent next asserts that the failure of his counsel to limit improper hearsay resulted in prejudice at his trial. Kent points to a single instance where his counsel failed to limit improper hearsay. The following statement, which was admitted without objection, was made by Debra Estes, the wife of Kent's co-worker:
 "And the (sic) she has another child that came home, this sister has another child that came home one day and said, `Kassie has a blue lip.' And at that time, it was very upsetting because it was like the whole family knew something was going on at that time. * * * Her sister said she asked April, `Why does Kassie have a bruise on her back?' and April said `It's from Ronnie picking her up.' And at that time it was like, well, people know there's bruises on this baby and nobody is doing nothing to protect the baby."
Despite counsel's failure to object to the above testimony this court cannot say that a single statement would result in such deficient performance by counsel that there was a reasonable probability that the outcome of Kent's trial would have resulted in acquittal rather than conviction.
Kent also argues that an assertion made by the State in its opening statement resulted in ineffective assistance of counsel because his attorney, after the court sustained his objection, failed to ask that the statement be stricken from the record or disregarded by the jury. In addition, Kent argues it was error for his attorney to refrain from giving an opening statement. Once again, we note that the actions of the attorney at trial are to be treated with deference. Decisions such as refraining from giving opening statements and treatment of jurors and witnesses are all part of a lawyer's trial strategy. Thus, this court cannot say that a strategic decision to refrain from oral arguments or address the jury in any other fashion rises to the level of prejudice or unreasonableness required under the law.
Finally, Kent argues that the decision of his attorney to withdraw his motion to sever resulted in prejudice. Specifically, Kent claims that his attorney misunderstood the rules of evidence and moved for a joint trial on that basis. However, Kent's argument is misplaced because he bases it on facts not contained in the record before this court. When no facts exist upon which to base an argument this court cannot possibly find that Kent suffered prejudice as a result.
Finding no deficiency or prejudice in counsel's actions this court cannot say that Kent received ineffective assistance of counsel.
No error having been shown Kent's first assignment of error is overruled.
Kent also claims that the decision of the jury to convict was not supported by sufficient evidence and even if there was sufficient evidence it is still unjust because the weight of the evidence was in favor of acquittal. Initially, we observe that "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Indeed, a judgment may be reversed on the weight of the evidence only if there is a concurrence of all three judges hearing the cause on appeal. Section 3(B)(3), Article IV, Ohio Constitution.
The legal concepts of sufficiency of the evidence and weight of the evidence are different. "Sufficiency is a term of art meaning that the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 382. To reverse a judgment of a trial court when there is insufficient evidence to support it, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary. Id. at paragraph three of the syllabus.
A claim that the verdict was against the manifest weight of the evidence does not mean that the evidence to convict was insufficient or inadequate. "Weight of evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing a claim that the conviction was against the manifest weight of the evidence the court considering the entire record:
 "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
The power to reverse a conviction and order a new trial is discretionary and should only be used in exceptional circumstances when the evidence weighs significantly against the conviction. Id.
at paragraph three of the syllabus.
Kent was convicted of a violation of R.C. 2903.04(A), involuntary manslaughter, a felony in the first degree. R.C.2903.04(A) reads:
 No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
The underlying felony charged in the indictment was R.C. 2919.22, endangering children. R.C. 2919.22 reads:
 (A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * *, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.
 (B) No person shall do any of the following to a child under eighteen years of age * * *:
(1) Abuse the child;
(2) Torture or cruelly abuse the child;
* * *
The testimony offered by the State at trial in favor of conviction demonstrated that on the morning of August 20, 1998, Kassie M. Kent was rendered unconscious and brain dead by a blunt trauma to her head. In their testimony both the State's and defendant's experts agreed that upon being struck so forcefully the three-month old child would be rendered unconscious immediately. Moreover, all testimony, even that of defendant-appellant Kent, reveals that Kent, Kassie's father, was the sole person caring for Kassie during the time period in which the lethal blow must have been struck.
The testimony heard by the jury at trial and summarized above supports a finding that Kent caused the death of Kassie M. Kent while committing or attempting to commit child endangerment. He did so by crushing his daughter's skull while she was in his custody, thus, creating substantial risk to Kassie's health that resulted in her death. As a result, we find that the evidence offered to convict Kent of involuntary manslaughter is sufficient.
Kent also claims that as a whole, the manifest weight of the evidence supported an acquittal not a conviction. The assessment of the credibility of witnesses and their testimony is a jury function. As a result, it must be remembered that the jury at trial heard all of the evidence, was instructed as to the law and found Kent guilty of involuntary manslaughter beyond a reasonable doubt.
Kent's basic argument is that the medical testimony is inconsistent, vague and unreliable because not one doctor could pinpoint the exact time of death and thus, it is possible that the cause of death did not occur while Kassie was in Kent's custody. However, all of the medical testimony offered by the State and the Defense agrees that because the blow to the skull was so severe that Kassie would have immediately been rendered unconscious. Moreover, Kent, in a video-taped interview two days after Kassie's death, stated that when Greene left him alone with Kassie on the morning of August 20th she was smiling and giggling. As a result, it follows that when Greene returned home fifteen minutes later to find Kassie unconscious, in the interim Kent had dealt the fatal blow to Kassie's skull.
The portions of the record discussed above, if believed, support a finding of Kent's guilt beyond a reasonable doubt and thus conviction, rather than acquittal is appropriate. Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crime of involuntary manslaughter proven beyond a reasonable doubt. Therefore we do not conclude that the jury lost its way or that by its verdict has caused a miscarriage of justice. No error having been shown, Kent's second assignment of error is also overruled and the judgment of the Court of Common Pleas of Crawford County is affirmed.
Judgment affirmed.
HADLEY and SHAW, JJ., concur.